520 So.2d 1082 (1987)
Edgar M. WILLIAMS, Plaintiff-Appellant,
v.
AMERICAN FAMILY MUTUAL INSURANCE COMPANY et al., Defendants-Appellees.
No. 86-1100.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
*1083 Gold, Simon, Weems, Bruser, Sharp, Sues & Rundell, Henry B. Bruser, Alexandria, for plaintiff-appellant.
Stafford, Stewart & Potter, James D. Kirk, Alexandria, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
GUIDRY, Judge.
Edgar M. Williams, individually and on behalf of his minor son, Kurt E. Williams, filed this suit for damages allegedly resulting from an automobile accident which occurred on July 20, 1983. The automobile occupied by Kurt was struck from the rear by an automobile driven by Elliot M. Schroll. Two years following the accident, on July 19, 1985, petitioner filed suit against Schroll, his insurers, American Family Mutual Insurance Company and American Standard Insurance Company of Wisconsin (hereafter American) and Reliance Insurance Company (hereafter Reliance), plaintiff's uninsured motorist carrier.[1] Schroll and his insurer filed an exception of prescription and in their answer alleged contributory negligence on the part of Kurt. Reliance filed answer in the nature of a general denial. The exception of prescription was referred to the merits. The case was tried to a jury which sustained the exception. Specifically, the jury determined that Schroll and American had not acknowledged the debt owed to plaintiff such as to interrupt the course of prescription. Judgment was rendered pursuant to the jury verdict and plaintiff appealed.

FACTS
On July 20, 1983, Kurt E. Williams was driving his father's 1982 Toyota pick-up truck south on U.S. Highway 71 in Rapides Parish, Louisiana. While stopped in a line of traffic on Highway 71, plaintiff's pick-up truck was struck from the rear by a 1968 Ford Thunderbird driven by Elliot M. Schroll. Kurt allegedly suffered a soft-tissue neck injury as a result of the accident.
On September 12, 1983, Ms. Nancy Engdahl, a claims representative for American, wrote to Edgar Williams and enclosed a draft payable to his order in satisfaction of the property damage claim to his Toyota pickup truck. In the September 12th correspondence, Ms. Engdahl also enclosed a draft in the amount of $50.00 and a release to be signed on behalf of Kurt. Mr. Williams subsequently returned the draft and release for Kurt's injury but cashed the draft which was sent to satisfy the damage to his truck. Thereafter, Ms. Engdahl contacted Mrs. Williams, Kurt's mother, every 30 to 60 days by telephone inquiring about the possibility of settling for Kurt's personal injury. Mrs. Williams indicated that she would settle only when Kurt was released from the doctor and was symptom-free. On each occasion, Ms. Engdahl informed Mrs. Williams that she would contact her again within 30 to 60 days to check on Kurt's progress. These negotiations between Ms. Engdahl and Mrs. Williams continued for almost two years postaccident, with contacts being made during the remainder of 1983; in the months of August, September and October of 1984; and, in January, March, April, May, June and July of 1985. Although Ms. Engdahl made numerous offers of settlement, *1084 she never categorically admitted that American or Schroll were indebted to plaintiffs. During this period, more than one year postaccident, American sent a receipt, release and check which were never negotiated. Subsequent to the tendering of the last receipt, release and check, the plaintiffs filed suit.
The principal issue on appeal is whether the jury clearly erred in sustaining the exception of prescription filed by the defendants, Schroll and American.
Generally, tort actions prescribe one year from the day injury or damage is sustained. La.C.C. art. 3492. However, prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe. La. CC. art. 3464. Liberative prescription is interrupted when the debtor acknowledges the right of the creditor. Acknowledgment of such a right may be formal or informal, express or tacit. See Comments, La.C.C. art. 3464; Flowers v. United States Fidelity and Guaranty Company, 381 So.2d 378 (La.1979). Interruption of prescription for an unliquidated claim for damages can be accomplished by a tacit acknowledgement by the debtor. Flowers, supra; Richardson v. Louisiana Farm Bureau, Etc., 393 So.2d 200 (La.App. 1st Cir.1980), writ denied, 398 So.2d 529 (La.1981). Once a plaintiff's petition shows on its face that the prescriptive period has run, the burden of proof is on the plaintiff to show an interruption or suspension of prescription. Simmons v. Bartleet Chemical, Inc., 420 So.2d 1273 (La.App. 3rd Cir.1982).
As our Supreme Court in Flowers v. United States Fidelity and Guaranty Company, supra, at 382, states:
"... acknowledgement sufficient to interrupt prescription may be made verbally, in writing, by partial payment, by payment of interest or by pledge, or in other ways, and that it may be implicit or it may be inferred from the facts and circumstances."
In our view, the record amply supports a finding that American tacitly acknowledged the debt owed to the plaintiffs thereby interrupting prescription and the trial court erred in holding to the contrary.
Ms. Nancy Engdahl testified that she realized early on that American's insured, Elliot Schroll, was 100% at fault in the accident. She also testified that it was company policy to seek out and settle claims when the company considered their insured to be 100% at fault. Additionally, after contacting the Williams family promptly to settle the property damage claim, Ms. Engdahl remained in continuous contact with Mrs. Williams for nearly two years. On each contact Ms. Engdahl inquired concerning the amount required to obtain a release for Kurt's injuries and, upon being informed that Kurt was not yet symptom free, indicated that she would contact the Williams again in 30 or 60 days. Mrs. Williams testified that she told Ms. Engdahl she would not settle or sign a release until her son was released from the doctor or was symptom-free. She also testified that she understood Ms. Engdahl's repeated contacts to mean they would indeed be paid once they notified Engdahl of Kurt's cure or release from the doctor. Although American, through its claims representative, may not have categorically acknowledged an indebtedness to Kurt Williams, we believe that, under the particular circumstances of this case, i.e., no issue of liability and continuous and frequent contact by American to make payment and obtain a release for almost two years postaccident, there was a tacit acknowledgment of the indebtedness sufficient to interrupt the course of prescription.
In deciding as it did, the jury did not consider the issues of liability or damages. Under the holding of Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), rather than remand this matter, we will decide same on its merits.
In the trial court, defendants conceded liability and presented evidence on the issue of damages only. Therefore, we need only consider the latter issue.
The record reflects that Kurt was not aware of any injury to himself at the scene of the accident. He did not require any *1085 emergency care. The morning after the accident Kurt complained of neck pain. He was treated by Dr. Thomas M. Reedy, the family physician, who was unable to detect any evidence of spasm or restriction. Dr. Reedy prescribed anti-inflammatory drugs, a mild analgesic and exercises. From that point forward, Kurt missed several appointments with Dr. Reedy and quit taking the anti-inflammatory drugs which he had prescribed.
Kurt was also treated by Dr. Gamburg, an orthopaedist. Dr. David H. Steiner and Dr. Ray J. Beurlot, Jr. each examined Kurt prior to trial. The latter examinations were conducted for diagnostic purposes only.
Drs. Reedy and Gamburg, Kurt's treating physicians, both testified that after treating Kurt, they detected no evidence of muscle spasm and observed that Kurt had full range of motion in his neck. They also both diagnosed Kurt as suffering from a neck or cervical sprain. As to the likelihood that Kurt would contract arthritis in the future, Dr. Reedy responded in the negative and Dr. Gamburg testified that such a possibility would be "highly speculative". Dr. Reedy testified that Kurt had "more muscle soreness than anything" and felt Kurt had "relatively minor complaints and minor findings". In reference to any type of change in bone structure in Kurt's neck, Dr. Reedy testified there would need to be more evidence of spasm at the time of injury. Dr. Gamburg testified there was some change in the contour of the neck at the C-4 level but that the change was insignificant.
Kurt was referred to Dr. Steiner, an orthopaedic surgeon, by his attorney. Dr. Steiner diagnosed Kurt as having "internal disc disruption" or "mild cervical arthritis". However, the record reflects that Dr. Steiner's diagnosis of "internal disc disruption" is not widely accepted nor found in standard orthopaedic texts. Dr. Steiner admitted that, although this diagnosis is generally determined by use of a discogram, Kurt did not exhibit enough pain or restriction in movement to justify a discogram. Dr. Steiner also observed that Kurt had a full range of motion and he would not put Kurt in a higher category of risk for arthritis. He also stated that the change in Kurt's cervical structure could have been due to Kurt's positioning while the x-ray was being taken.
Kurt was finally referred to Dr. David H. Beurlot for an independent examination. Dr. Beurlot, an orthopaedic surgeon, found a normal range of motion. He diagnosed Kurt's condition as a "resolved cervical strain". Additionally, Dr. Beurlot testified that there is no evidence of arthritis in Kurt's neck. He further testified that the ossification or changes in the bone structure of the neck is probably "due to some strain or injury to the ligamentous structures... as opposed to actual joint damage". However, Dr. Beurlot stated that this condition would not create a physical disability or affect Kurt's range of motion in his neck. Also, he too could not conclude more probably than not that it would result in any future disability.
A preponderance of the medical testimony prompts us to conclude that plaintiff received a moderately severe neck sprain for which he was treated conservatively. There is no evidence in the record that plaintiff's activities were curtailed to any degree for an extended period of time. There is ample evidence to indicate plaintiff has suffered no permanent disability and his pain, for the most part, was controlled with simple analgesics.
We believe, under the circumstances, that an award of $3,500.00 in general damages is adequate. Plaintiff is entitled to his medical expenses which amounted to $656.54.
For the above and foregoing reasons, the verdict and judgment of the trial court is reversed. It is now ordered, adjudged and decreed that there be judgment in favor of plaintiffs, Edgar M. Williams, individually and on behalf of his minor son, Kurt Williams, and against defendants, American Family Mutual Insurance Company and Elliot M. Schroll, in solido, in the amount of $4,156.54 with legal interest from date *1086 of judicial demand until paid. Plaintiffs' demand against Reliance Insurance Company is dismissed. Defendants-appellees are cast with all costs at the trial level and on appeal.
REVERSED AND RENDERED.
DOMENGEAUX, J., concurs.
NOTES
[1] American Family Mutual Insurance Company and American Standard Insurance Company of Wisconsin are members of the American Family Insurance Group. Although both were made parties defendant and answer was filed on behalf of both insurance companies, American Family Mutual Insurance Company is the insurer of Schroll, as reflected by the insurance policy admitted in evidence as Plaintiff's Exhibit 10. American Standard Insurance Company is not named in the trial court judgment.