571 So.2d 843 (1990)
Eunice A. LANDOR, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, Harlow V. Woods and Mark E. Guidry, Defendants-Appellees.
No. 89-737.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1990.
Writ Denied February 8, 1991.
Wm. H. Lambert, Lafayette, for plaintiff/appellant.
Martin, Taulbee, Rowe, Bares & Oliver, Terry L. Rowe, Lafayette, for defendants/appellees.
Before GUIDRY, FORET and KING, JJ.
GUIDRY, Judge.
Plaintiff, Eunice A. Landor, appeals a judgment of the trial court sustaining defendants' exception of prescription and dismissing her tort suit, with prejudice.
On August 2, 1987, Ms. Eunice A. Landor, a femme sole, was involved in an automobile accident at the intersection of Southwest Evangeline Thruway and East Taft Street in Lafayette, Louisiana. The other vehicle was driven by Mark Guidry but owned by Harlow Woods, an insured of Allstate Insurance Company (hereafter Allstate). Landor filed suit against the defendants, Guidry, Woods and Allstate, on September 19, 1988, more than one year after the accident.
On appeal, Landor urges that certain actions taken by Allstate following the accident interrupted the course of prescription of La.C.C. art 3492.
"Generally, tort actions prescribe one year from the day injury or damage is sustained. La.C.C. art. 3492. However, prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe. La.C.C. art. 3464. Liberative prescription is interrupted when the debtor acknowledges the right of the creditor. Acknowledgment of such a right may be formal or informal, express or tacit. See Comments, La.C.C. art. 3464; Flowers v. United States Fidelity and Guaranty Company, 381 So.2d 378 (La. 1979). Interruption of prescription for an unliquidated claim for damages can be accomplished by a tacit acknowledgment by the debtor. Flowers, supra; Richardson v. Louisiana Farm Bureau, Etc., 393 So.2d 200 (La.App. 1st Cir. 1980), writ denied, 398 So.2d 529 (La. 1981). Once a plaintiff's petition shows *844 on its face that the prescriptive period has run, the burden of proof is on the plaintiff to show an interruption or suspension of prescription. Simmons v. Bartleet Chemical, Inc., 420 So.2d 1273 (La.App. 3rd Cir.1982).
As our Supreme Court in Flowers v. United States Fidelity and Guaranty Company, supra, at 382, states:
`... acknowledgement sufficient to interrupt prescription may be made verbally, in writing, by partial payment, by payment of interest or by pledge, or in other ways, and that it may be implicit or it may be inferred from the facts and circumstances.'"
Williams v. American Family Mutual Insurance Company, 520 So.2d 1082 (La. App. 3rd Cir.1987).
Shortly after the accident, plaintiff engaged William H. Lambert as her attorney. In his negotiations with Allstate, Lambert dealt with three different adjusters: Anna Primeaux, Chuck Hebert and Gale Badon. The following was introduced at trial:
1. Letter from Ms. Primeaux to Lambert dated October 19, 1987, whereby Ms. Primeaux offers to "take care of Ms. Landor's property damage".
2. Letter from Lambert to Ms. Primeaux dated November 13, 1987, in which the liability of Allstate's insured is alleged and in which Ms. Landor's "to date" medical expenses are listed. Letter also makes demand for payment of plaintiff's property damage and lists the cost to replace Ms. Landor's damaged windshield ($207.50) plus two estimates ($1,005.95 and $1,027.25) to repair Ms. Landor's vehicle.
3. Letter from Anna Primeaux to Lambert dated November 24, 1987 tendering a check for $1,213.46 ($207.50 plus $1,005.96, the lower of the two estimates submitted with Lambert's letter of November 13, 1987) to cover plaintiff's property damage plus cover letter requesting additional medicals "... so we can evaluate her claim".
4. Letters from Ms. Primeaux to Lambert dated December 14, 1987 and January 4, 1988 complaining of being unable to reach Lambert and requesting up to date medicals.
5. Letter from Charles Hebert to Lambert dated January 12, 1988, notifying Lambert of Hebert taking over the handling of plaintiff's claim, requesting up to date medicals and permission to take plaintiff's statement.
6. March 1, 1988 letter from Hebert to Lambert requesting up to date medicals so that Allstate can "... make a prompt and fair settlement with you and your client".
7. March 2 and 14, 1988 letters from Lambert to Hebert giving up to date medicals and advising Allstate that plaintiff anticipates surgery. Both letters suggest "... you revise your reserve to accomodate this major injury and the substantial accompanying expenses".
8. Hebert's letter of June 8, 1988 to Lambert in which Hebert requested additional medicals and states: "If treatment is complete forward above with settlement demand".
9. July 20, 1988 letter to Lambert from Gail Badon informing Lambert that she is now handling the Landor claim.
10. Letter dated July 29, 1988 from Lambert to Hebert, which Allstate denies receiving. This correspondence provides up to date medicals, acknowledges Allstate's letters of June 8 and July 20, 1988 and suggests that Hebert contact Lambert so that "... we can continue our discussions of compromise, along the lines of our telephone settlement conference of April 18, 1988." In closing, Lambert states he will hold claim in abeyance until contacted by Hebert.
11. August 17, 1988 letter from Ms. Badon to Lambert requesting Lambert contact her in order to attempt "... to settle this matter".
This suit was filed on September 19, 1988. Defendants urged that prescription tolled on August 2, 1988. The trial judge agreed concluding in written reasons for judgment as follows:
"The facts showed that through her correspondence defendant's claim representative attempted only to determine plaintiff's *845 medical condition; not to admit the company's liability for plaintiff's personal injuries. Plaintiff's Exhibit E[1] was a unilateral statement of intent and the fact that defendant insurer received this letter (which defendant insurer denied) does not constitute an acknowledgement nor indicate that the insurer joined him in a delay.
This Court in considering all the circumstances surrounding the negotiations concludes that an acknowledgement of plaintiff's claim did not take place before prescription tolled. The intentions of the parties in relation to the payment of property damage was apparent. Defendant insurer identified the draft as `property damage' and it was cashed as such by Ms. Landor. The cover letter of November 24, 1987 that accompanied the draft notified plaintiff's counsel that the draft was for Ms. Landor's property damage. Thereafter all correspondence concerned only plaintiff's medical condition.
There was no evidence presented which clearly and specifically indicated that defendant insurer accepted liability."
We reverse concluding that the payment in full, after demand, of plaintiff's property damage claim on November 24, 1987 served to interrupt the prescription of La. C.C. art. 3492.
Plaintiff is a femme sole and as such is the only proper party to sue for her damages whether those damages be property damage, lost wages, medical expenses, pain and suffering, or any other element, or combination thereof, of damages for which the law allows recovery. Landor's claim for property damage, medical expenses, personal injury etc. all arise as a result of the August 2, 1987 accident. Therefore, plaintiff's property damage claim was merely one element of her total damage claim. Pursuant to a demand letter from plaintiff's counsel (see # 2, letter of November 13, 1987) which alleges liability of Allstate's insured, Allstate paid the full amount of the property damages demanded. We find that this full payment, in response to plaintiff's demand, constitutes a partial payment of her damages and served to interrupt prescription. See Williams, supra, quoting Flowers v. United States Fidelity and Guaranty Company, 381 So.2d 378 (La.1980).
The Flowers case is clearly distinguishable on this issue and, in fact, supports our conclusion that a payment of plaintiff's property damage claim served to interrupt prescription. In Flowers, the wife was injured in an automobile accident in 1976. Under our law at that time, the husband, as head and master of the community, possessed the sole right to sue for and recover the community's claim for property damages and the wife's medical expenses. On the other hand, the wife had the sole right to sue for and recover her personal injury damages. The Supreme Court held that, although the partial payment to the husband for medical expenses borne by the community served to interrupt prescription running against his claims, such payment did not interrupt prescription running against the wife's action to recover for her personal injuries. In that case, the court stated:
"We find from the evidence that the insurance company, which paid Mr. Flowers for all but $175 of Mrs. Flowers' medical expenses intended to acknowledge its indebtedness for all of these expenses. There is no evidence that the company sought merely to compromise this claim. Contrary to our finding on original hearing, however, the evidence does not disclose that the insurance company ever admitted that it owed Mrs. Flowers for her personal injuries. It is true that its adjuster expressed a willingness to discuss her claims and to try to reach a compromise with her. But his statements and actions did not manifest an intention to admit the company's indebtedness to her." (Emphasis ours)
Flowers, supra, at 381.
In the case sub judice, plaintiff is a femme sole, the only person who has the right to sue for and recover damages. Thus, there is but one cause of action vesting *846 in the plaintiff, the right to recover all damages which she suffered as a result of the August 2, 1987 accident, property damage being simply one element of those damages. Therefore, considering the partial payment (acknowledgment) of such damages on November 24, 1987, plaintiff's suit filed September 19, 1988 was timely.
Collins v. Capital Valve and Fitting Company, 409 So.2d 579 (La.1982) and Simmons v. Bartleet Chemical, Inc., 420 So.2d 1273 (La.App. 3rd Cir.1982), relied upon by defendants, are distinguishable and lend no support to defendant's position.
In Collins and Simmons there was no partial payment of plaintiffs' claims for damages and thus no acknowledgment sufficient to interrupt prescription. Rather, Collins and Simmons considered the effect of payment of property damage claims pursuant to a transaction and compromise. In Collins, supra, at 580, the court stated:
"It is not necessary to address the arguments made by plaintiffs concerning the effect of Flowers because we find that is not controlling in this case. Flowers dealt with the effect of acknowledgment of the prescriptive period and, here, it is apparent that there was not an acknowledgment but, rather, a settlement which acted as a transaction and compromise of the property damages.
A transaction or compromise is an agreement between two or more persons who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner upon which they agree and which every one of them prefers to the hope of gaining, balanced by the danger of losing. See C.C. art. 3071. Mr. and Mrs. Collins originally sought $1,600 and retention of the salvage of their automobile; however, they ultimately accepted $1,356.34 and retention of the salvage. Therefore, the Collins' gave up the right to claim a higher sum for property damage and the insurance company gave up the right to dispute liability."
Pursuant to this finding and the provisions of La.C.C. art. 3073, the court in Collins concluded that the compromise payment for the property damages did not interrupt the prescriptive period as to the other items of damage. Simmons is to the same effect.
In the instant case, the payment by Allstate of plaintiff's property damage was not made pursuant to a transaction and compromise. Rather, on written demand, Allstate promptly paid plaintiff the full amount of all property damages claimed. We conclude that this partial payment of Landor's damages on November 24, 1987 served to interrupt the running of prescription against her claim. Therefore, her suit filed September 19, 1988, less than one year following this payment, was timely. Guice v. Mustakas, 490 So.2d 390 (La.App. 5th Cir.1986); Flowers, supra. The trial court erred in concluding otherwise.
In oral argument, appellee suggested that, under analogous factual circumstances, we held to the contrary in Farley v. Pat Todd Oil Co., Inc., 544 So.2d 754 (La.App. 3rd Cir.1989), writ denied, 548 So.2d 1230 (La.1989). In Farley, we stated:
"As previously stated, plaintiff urges that the payment of medical expenses by Pat Todd Oil Company, Inc. and USF & G was acknowledgment sufficient to interrupt the course of prescription on the liability portion of her claim.
The interruption of prescription has no effect beyond the specific right of the person to whom the debtor makes acknowledgment. Flowers, supra. Accordingly, the plaintiff's right to recover for her personal injuries was distinct from her right to recover medical expenses. Legal interruption does not regularly transfer from one obligation or action to another. Flowers, supra. Thus, the defendants' acknowledgment of plaintiff's right to reimbursement for medical expenses did not interrupt prescription for her right to recover for her personal injuries." (footnote omitted)
This writer, a member of the panel in Farley, candidly admits that we misstated the holding of Flowers when we concluded that the plaintiff's right to recover for her personal injuries was distinct from her *847 right to recover medical expenses. This erroneous statement resulted from our failure to properly apply the holding in Flowers that interruption of prescription has no effect beyond the specific right of the person to whom the debtor makes acknowledgment. We reject our aforesaid statement in Farley to the contrary. However, the result which we reached in Farley is correct. In Farley, the plaintiff had two causes of action as a result of being injured while on defendant's premises, i.e., a quasicontractual right to recover under the medical payment provisions of the insurer's policy and a cause of action ex delicto under the liability provisions of the insurer's policy. The insurer paid plaintiff's medical expenses under the med pay provisions of the policy and, without admitting liability, attempted to settle with plaintiff for $500.00, which settlement offer was rejected. Under these circumstances, the payment of plaintiff's medical expenses did not interrupt the course of prescription tolling against her tort claim. As Justice Lemmon aptly noted in concurring in the Supreme Court's denial of supervisory relief in Farley, "[t]he payments were made under the medical payments feature of defendant's policy and the payment was due irrespective of defendant's liability in tort".
Under similar factual circumstances, we reached the same result in Touchet v. State Farm Fire & Casualty Company, et al, 542 So.2d 1142 (La.App. 3rd Cir.1989), writ denied, 546 So.2d 1214 (La.1989), noting that "[l]egal interruption does not regularly transfer from one obligation or action to another".
We note that in Melton v. U.S.F. & G. Ins. Co., et al, 531 So.2d 1140 (La.App. 4th Cir.1988), our brethren of the Fourth Circuit considered the precise issue which we decide today concluding as follows:
"In Flowers, supra, the defendant-insurer tacitly acknowledged the obligation to pay the wife's medical expenses by partial payment to the husband, then head and master of the community. The Court held that this payment sufficiently interrupted prescription as to the claim for medical expenses, but not for the personal injuries of the wife. However, since Flowers the law of matrimonial regimes has been revised allowing a married woman to recover on her own behalf all of the elements of her damage claim. Odessa House v. Goss, 453 So.2d 299, 304 (La.App. 3rd Cir.1984).
Although Flowers rejected the personal injury claim of the wife because there was no payment to her to interrupt prescription, it did allow recovery by the husband for the wife's medical expenses. Applying this same rationale to the instant case we find that because the defendant-insurer made two payments directly to Stella Melton for medical expenses, they constituted a tacit acknowledgment of the debt sufficient to interrupt the running of prescription for all claims arising out of the accident."
Accordingly, for the reasons stated, we reverse and remand for further proceedings. Defendants, Allstate, Woods and Guidry, are cast for all costs of this appeal. Liability for costs at the trial level are to await a final determination of this matter.
REVERSED AND REMANDED.
NOTES
[1] Letter dated July 29, 1988 from Lambert to Hebert, No. 10 above.