983 So.2d 106 (2008)
Elizabeth Neikirk Wife of/and James NEIKIRK
v.
RESOURCE MANAGEMENT, INC. and First Speciality Insurance Corporation.
No. 07-CA-603.
Court of Appeal of Louisiana, Fifth Circuit.
February 6, 2008.
Thomas M. Flanagan, Jennifer L. Thornton, Laura E. Kraemer, Stanley, Flanagan & Reuter, L.L.C., New Orleans, Louisiana, for Plaintiffs/Appellants.
Max J. Cohen, Mark S. Stein, Marcelle P. Mouledoux, Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P., New Orleans, Louisiana, for Defendants/Appellees.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and GREG G. GUIDRY.
MARION F. EDWARDS, Judge.
This is an appeal taken by plaintiffs from a judgment of the trial court that maintained a defense exception of prescription and dismissed the underlying action with prejudice. For reasons that follow, we reverse the judgment and remand the matter to the trial court.
Plaintiffs/appellants, James and Elizabeth Neikirk, were clients of Resource *108 Management, Inc. (RMI), a financial planning company. The Neikirks engaged the services of D. Randolph Waesche, a principal of RMI, on March 2, 2001 to develop a complete financial plan. The agreement between the Neikirks and Waesche was that RMI would provide full service financial advice to the Neikirks upon disclosure by the Neikirks of all necessary financial data. The agreement was renewed annually and the business relationship between the Neikirks and Waesche was successful until early 2003. At that time, Mr. Neikirk, an executive with Entergy, was considering an employment move to Pantellos Group Limited Partnership (Pantellos), a small start up company based in Texas. He consulted Waesche regarding the financial consequences of the employment move.
In May of 2003, based on advice given to him by Waesche, Mr. Neikirk resigned his position with Entergy and moved to Texas to become the president and CEO of Pantellos. Part of the representation included in the financial advice given was that the over $800,000 accumulated in Mr. Neikirk's retirement account with Entergy could be rolled over into a new plan and would continue to be tax deferred.
Unfortunately, that assessment was incorrect. When Mr. Neikirk left his position with Entergy, he discovered that his retirement plan with Entergy could not be rolled over into another plan because he had not been employed with Entergy for the required amount of time to be vested in the plan. As a result, the plan was liquidated and treated as ordinary income by the Internal Revenue Service, causing the Neikirks to incur an additional tax liability of $283,343 for 2003.
This incorrect advice was a major consideration in Mr. Neikirk's decision to resign his position with Entergy. In a letter dated January 13, 2004, Mr. Waesche admitted that he had given the Neikirks incorrect information when he advised them that the plan could remain invested without tax consequences. In that letter, Mr. Waesche provided a "guarantee that the net after tax consequences of your decision is not negative." Also contained in the letter is a proposal on how damages should be calculated.
When good faith negotiations proved unsuccessful, Mr. Neikirk sent a demand letter dated February 22, 2004 to Mr. Waesche seeking reimbursement of $283,343 in losses due to the error. This suit for damages, making claims of breach of contract, negligence and negligent misrepresentation, and detrimental reliance was filed on October 25, 2005. Both RMI and its insurer, First Specialty Insurance Corporation, were named as defendants. An amended petition, filed subsequently, extended the factual background of the claim.
RMI filed an exception of prescription asserting that an action filed in 2005 based on the advice given in 2003 was untimely. After a hearing on the matter, the trial court maintained the exception and dismissed the Neikirks' claims with prejudice. The trial court gave written reasons for its ruling which indicate the court found the action to be delictual rather than contractual in nature; therefore, subject to a one-year prescriptive period. The trial court characterized the claim as professional malpractice. The trial court also found that, even if Mr. Waesche's January 13, 2004 letter was an acknowledgement of the debt, the suit filed more than a year later was untimely. It is from that judgment that the Neikirks appeal.
In brief to this Court, the Neikirks make several arguments to support their assertion that the trial court erred in maintaining the exception of prescription. They argue that the claims are contractual *109 and subject to a ten-year prescriptive period and that the January 13, 2004 letter is a new contract or, in the alternative, that it acknowledged the debt and interrupted prescription. Additionally, the Neikirks assert the defense of contra non valentem to avoid the tolling of the prescriptive period.
RMI argues the action makes claims only in tort and that the January 13, 2004 letter was only part of ongoing settlement negotiations that did not interrupt prescription.
Although the parties disagree on the characterization of the claims in the action and the effect of the January 13, 2004 letter, they do not disagree on the facts.
All parties agree that Mr. Waesche gave incorrect information regarding the deferral of tax liability on Mr. Neikirk's Entergy benefit package and that the incorrect information was a major consideration in Mr. Neikirk's decision to change employment. It is also undisputed that the involuntary liquidation of the Entergy account upon Mr. Neikirk's resignation caused the Neikirks to incur an additional $283,343 in taxes for 2003. A significant fact also agreed upon by the parties is that Mr. Waesche acknowledged his error in a letter to the Neikirks on January 13, 2004 and that a claim was made to Mr. Waesche's professional malpractice insurance.
Mr. Waesche's deposition is contained in the record. He confirmed that he gave incorrect information to the Neikirks on the issue of whether the taxes on the Entergy benefit package could be deferred. Mr. Waesche further admitted that he wrote the letter dated January 13, 2004 as part of the ongoing discussions about how to rectify the mistake. He stated that these discussions started when the mistake was discovered in May of 2003 until the spring of 2005. These discussions related to quantification of the financial ramifications of the advice, rather than whether RMI was responsible for the consequences of the advice. Mr. Waesche testified that he continued to give the Neikirks assurances that the damages would be rectified as late as August 2005. He also stated at the hearing that he still believed the situation could be resolved.
It is clear from Mr. Waesche's testimony that his intent was to acknowledge the responsibility for any financial loss the Neikirks incurred as a result of his incorrect advice. The only negotiations continuing among the parties related to the method in which the damages, if any, should be calculated.
LAW AND ANALYSIS
The burden of proof of showing prescription is generally on the exceptor, unless prescription is evident on the face of the petition. In the matter before us the action is not prescribed on its face; therefore, the defendants have the burden of proving the matter has prescribed.[1] Evidence may be introduced to support or controvert the peremptory exception of prescription when the grounds for the exception do not appear on the face of the petition.[2]
Evidence produced includes the letter dated January 13, 2004 written by Mr. Waesche to the Neikirks that states:
Attached please find a copy of our errors and omissions policy for your review. Your contact is anyone in the legal department.

*110 Jim and Beth, my advice on the deferability of your Entergy non-qualified benefit package was incorrect, and as a result you paid federal and state income tax on the distribution as a part of your 2003 income. This is an error that I am sorry for and disappointed in as it violates my personal code of professionalism.
. . . .
Resource Management, Inc. will guarantee that the net after tax consequences of your decision is not negative. This guarantee is made in part because I believe you made the correct decision in taking the risk, and in part I believe you will succeed.
The letter continues with a proposal for a method of calculation of losses due to the incorrect information. The proposed method calculates the difference between the "lost opportunity," and the "opportunity gained at Pantellos," and asserts that "[i]f the net after tax value of the Pantellos options is less than the calculation of the lost opportunity by taxing the Entergy non-qualified benefit package, Resource Management will pay the difference."
An e-mail dated February 16, 2004 from Mr. Neikirk and Mr. Waesche shows that the proposal was accepted. In that e-mail, Mr. Neikirk wrote:
In an earlier email, you proposed a settlement regimen that I found innovative and attractive. It would devise a settlement on or about March 15, 2007 comparing the relative values of Pantellos stock options to ordinary income taxed paid on premature Entergy distributions in 2003, adjusted for foregone earnings potential. This is complicated to understand and involves some risk underwriting on your part and deferral of restitution on my part, but I am willing to work it out if you are.
About one year later, on January 24, 2005, Mr. Waesche wrote to Mr. Neikirk to inquire about the value of the Pantellos stock options. In that letter, Mr. Waesche asks, "What happened to the Pantellos options/grants? Did they get rolled up into the estimated 5,590,187 share of Perfect Commerce, Inc. equity grants or did they get exercised? Please advise." Thus, it is clear that, in January 2005, the parties were still attempting to get the necessary figures for payment on the guarantee made by Mr. Waesche in the January, 13, 2004 correspondence. Two e-mails on January 26, 2005 indicate that the Pantellos stock options were rolled over, enhancing the Neikirks' financial outlook, and that the parties were disputing how the amount should be calculated. This action was filed on October 5, 2005.
Prescription runs against all persons unless exception is established by legislation.[3] Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe.[4] The Louisiana Supreme Court has explained that the code article providing for an interruption of prescription by acknowledgment does not require any particular form.[5] Nor does it require a determined amount certain.[6] It is required only that the right of the obligee be recognized by the acknowledgment of the obligor.[7] The Louisiana Supreme Court has *111 summarized the law in this area as follows:[8]
A tacit acknowledgment occurs when a debtor performs acts of reparation or indemnity, makes an unconditional offer or payment, or lulls the creditor into believing he will not contest liability. Conversely, mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims will not constitute acknowledgments. These generalizations are reflected in the host of cases addressing the issue of what constitutes a tacit acknowledgment. Our courts have added to the above generalizations other criteria that evidence an acknowledgment, including undisputed liability, repeated and open-ended reassurances of payment, and continuous and frequent contact with the creditor throughout the prescriptive period. Conversely, our courts have recognized that mere recognition of a disputed claim, conditional payments, and settlement or compromise offers or negotiations do not evidence an acknowledgment.
. . . An acknowledgment is a simple admission of liability resulting in the interruption of prescription that has commenced to run, but not accrued, and may be made on an informal basis.
(Footnotes and citations omitted.)
If an acknowledgment is made, prescription is interrupted. If prescription is interrupted, the time that has run is not counted. All accrued time is erased and the prescriptive period commences anew from the last date of an interruption.[9]
We believe the January 13, 2004 letter is an acknowledgment of the debt sufficient to interrupt prescription. Further, Mr. Waesche's testimony that he assured the Neikirks that his intent was to find a suitable formula for his guarantee that "the net after tax consequences of your decision is not negative," supports our finding that prescription has been interrupted on the Neikirks' action. Mr. Waesche acknowledged in writing, and continued to acknowledge at the hearing on the exception, that his negligence caused the Neikirks to incur unexpected tax consequences. He guaranteed no negative financial consequences as a result of that error. Further, he devised a formula for calculating the tax consequences in view of the decision to accept the new position with stock options at Pantellos. It is clear from the testimony and written documents that this is a complicated financial transaction that will require time to ascertain all of the figures needed to work out the financial consequences of the move.
E-mails suggest that, because the stock options in Pantellos would have to be valued in the future, the settlement figure could be calculated about March of 2007. However, even if the e-mails of January 26, 2005 are considered as the point at which prescription began to run anew on the Neikirks' claim, the action filed nine months later is timely under either a contractual or negligence action.
Accordingly, we find the trial court erred in maintaining the exception of prescription, and we reverse that judgment and reinstate the Neikirks' action. The matter is hereby remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] Jinright v. Glass, 06-888 (La.App. 5 Cir. 2/27/07), 954 So.2d 174, 177, writ denied, XXXX-XXXX (La.5/4/07), 956 So.2d 618.
[2] LSA-C.C.P. art. 931
[3] LSA-C.C. art. 3467
[4] LSA-C.C. art. 3464
[5] Flowers v. United States Fid. & Guar. Co., 381 So.2d 378 (La.1979) (discussing LSA-C.C. art. 3520, the predecessor article to LSA-C.C. art. 3464).
[6] Id.
[7] Id.
[8] Lima v. Schmidt, 595 So.2d 624, 634 (La. 1992)
[9] LSA-C.C. art. 3466.