490 So.2d 390 (1986)
Gerald P. GUICE, Individually and on Behalf of his minor child, Madeleine Guice
v.
George MUSTAKAS and Allstate Insurance Company.
No. 86-CA-119.
Court of Appeal of Louisiana, Fifth Circuit.
June 2, 1986.
*391 Hugh D. Aldige, Metairie, for plaintiff-appellee.
William H. Voigt, Metairie, for defendants-appellants.
Before KLIEBERT, GRISBAUM, Jr. and NACCARI, J. Pro Tem.
KLIEBERT, Judge.
Defendants George Mustakas and Allstate Insurance Company appealed a final judgment dated September 18, 1985, awarding to Madeleine Guice, plaintiff, $9,500.00 for injuries sustained in an automobile accident. The appeal presents two issues: (1) Is a previous judgment dismissing defendants' exception of prescription reviewable on this appeal and, if so, (2) had Madeline Guice's claim prescribed before suit was filed. Appellants' brief raises no issue as to the amount of the award; hence, we consider merely the issues relative to prescription. As to these we find them reviewable and, on review, for the reasons hereinafter stated, affirm the trial judge's ruling.
On January 10, 1984 Gerald Guice, individually and on behalf of his minor daughter, Madeleine Guice,[1] appellee, filed suit against George Mustakas and his insurer, Allstate, for medical expenses incurred by Mr. Guice and bodily injuries sustained by Madeleine in an accident alleged to have occurred on April 22, 1982 (subsequently amended to March 24, 1982) while she was riding as a guest passenger in an automobile being operated by Sean Mustakas, a minor. The petition was met with an exception of prescription predicated on the grounds the claim had prescribed under the *392 provisions of Civil Code Article 3536. Following a hearing on May 31, 1984, the trial judge, by judgment dated June 1, 1984, overruled the exception of prescription. Subsequently, at the trial on the merits held on September 18, 1985 the defendants admitted liability. The litigants also stipulated Allstate had made payments for all medical bills submitted to them and stipulated into evidence a copy of the transcript of the original hearing on the exception of prescription. Following the hearing on the merits the trial judge stated he would maintain his previous ruling on the issues of prescription without the necessity of rendering an additional judgment and by judgment dated September 18, 1985 awarded Madeleine Guice $9,500.00 for her injuries together with legal interest and costs.
Plaintiff argues prescription is not a reviewable issue on this appeal because the judgment of June 1, 1984 was final and the time for an appeal had expired when this appeal was brought. We do not agree. The dismissal of an exception of prescription is an interlocutory judgment and is not appealable in the absence of irreparable injury. LSA-C.C.P. Articles 2083 and 1841. Edwards v. Lousteau Auto Sales, Inc., 424 So.2d 460 (5th Cir. 1982). Further, after judgment is rendered on the merits an interlocutory judgment becomes part of the final decree and subject to review on appeal. Firemen's Pension and Relief Fund v. Boyer, 420 So.2d 1323 (3rd Cir.1982); Texas Gas Transmission Corp. v. Soileau, 251 So.2d 104 (3rd Cir.1971), writ refused 253 So.2d 214.
At the May 31, 1984 hearing on the exceptions, Mr. Guice, Ms. Dorothy H. Theriot and Ms. Carol S. Savoie, the latter two being adjusters for Allstate, personally appeared and testified.
According to Guice, he started a dialog with Allstate about his daughter's injuries in October, 1982. He testified that talking to the adjuster gave him the impression the claim would be settled and the bills would be paid as they were submitted. A medical bill was submitted to Allstate's adjuster in October 1982 with a note (not in evidence) stating his understanding that acceptance of payment of the bill would not jeopardize the future settlement of his daughter's claim. In December he received a draft for the amount of the medical bill which had been forwarded to Allstate in October 1982. The payment draft was made out to "Jerry Guice for Minor Daughter Madeline Guice" and contained the following notation: "Partial Settlement of Claim for Bodily Injury Arising from Accident on 04/24/82." On January 10, 1983 he submitted a bill to Ms. Savoie with a handwritten note which said "The enclosed bill from Dr. Derbes is accident related. I'll communicate to Dr. Kuebel and Dr. Derbes that you'd like a formal report to conclude the claim for my daughter, Madeleine Guice." Then, on January 12, 1983, he received a draft made out to Jerry Guice and marked "Partial Settlement of Claim under Medical Payments Coverage Arising from Accident on 04/24/82." Both drafts were signed by Carol Savoie. He also testified it was his impression he did not need an attorney to represent his daughter and if an untrained parent represented the daughter he did not have to be concerned about a time limitation on her claim. On cross-examination he admitted to having been so informed by sources other than the personnel of Allstate. It was also his testimony, however, that he was led to believe by Allstate personnel that Allstate would ultimately settle the claim without regards to time limits because on several occasions when he raised the issue of time limits he was told "Yes, we will be happy to take care of the claim. Give us the bills." In clarification of the way in which he formulated this impression he said:
".... Let me interject this. These ladies [Ms. Theriot and Ms. Savoie] may not have said there was no twelve month or ten year or any length of time limitationthe first three fourth of the year or maybe the whole twelve months of the year, but I did on several occasions say I understood there was no time limit involved here and invariably the answer *393 was `That's right, Mr. Guice. Just give her the bills and we'll pay them.'"
Subsequently, on September 7, 1983, pursuant to the January 10, 1983 note, Guice wrote to Ms. Theriot enclosing medical reports (one dated May 9, 1983 and one dated September 6, 1983) and demanded $7,500.00 in settlement of the claim. Ms. Theriot responded on September 28, 1983 stating that she double checked her previous oral statement the claim appeared to have prescribed and found that the claim had in fact prescribed on April 24, 1983; hence, she had no choice but to deny this claim.
According to the testimony of Ms. Theriot and Ms. Savoie, the claim was originally handled by Ms. Savoie. When Ms. Savoie was transferred to Allstate's Covington office in February 1983, Ms. Theriot was assigned the file. Ms. Theriot said she had no contact with Guice from the time she took over the file in February 1983 to September 8, 1983. On the latter date, Guice appeared in Allstate's office with his letter of September 7, 1983 setting out his demand. She originally denied any conversation with Guice relative to the interruption of prescription. Subsequently, in response to defendant counsel's questions she testified that in a September 7, 1983 conversation with Guice, he informed her he spoke to an attorney friend who informed him he had two years in which to make the claim for his daughter's injuries.
Ms. Savoie testified that all other claims arising out of the accident of March 24, 1982 were settled before August 1982, the earliest date on which she spoke to Mr. Guice about his daughter's claim. At this meeting Mr. Guice informed Ms. Savoie there would be delays in his daughter's treatment. She paid his daughter's medical bills one at a time in hopes he would come in and settle, but she never made a lump sum settlement offer due to the lack of medical reports which were repeatedly requested from Mr. Guice. At the time she gave her testimony there was in her hand a note prepared by her while reviewing the file in which she said relative to January 10, 1983:
"Still skeptical about accepting a settlement at this time. He wanted an approximate value of the claim. I couldn't make any commitment to a figure. At this time I still have no medicals."
According to her, prescription was not discussed with Mr. Guice because at the time the file was transferred to Ms. Theriot the accident had occurred only nine months previous. Hence, there was no reason for her to bring up or discuss prescription with Mr. Guice. In all of her discussions with Mr. Guice, even as early as January 1983, she was aware he was making a claim on behalf of his minor daughter, but maintained she never offered or agreed on a settlement figure because although repeatedly requested she had never received medical reports.
As noted by appellants, where a plaintiff's cause of action has prescribed on the face of the petition the plaintiff bears the burden of proof to rebut the exception of prescription. Blanchard v. Reeves, 469 So.2d 1165 (5th Cir.1985); Shushan, Meyer, Jackson, et al v. Machella, 483 So.2d 1156 (5th Cir.1986).
Counsel for the plaintiff argued at the trial level and here that prescription was interrupted and cites Civil Code Article 3520 and the jurisprudence formed thereunder, particularly, Flowers v. USF & G, 381 So.2d 378 (on rehearing) (La.1980) in support of his argument.
LSA-C.C. Article 3520 provided as follows:[2]
"Prescription ceases likewise to run whenever the debtor, or the possessor, makes acknowledgment of the right of the person whose title they prescribed."
In the original opinion in the Flowers case, Justice Blanche, at page 380, with respect to acknowledgment said:

*394 "On its face, all that is required is a simple acknowledgment by the party who owes the debt; neither does the Code require that the acknowledgment be in any particular form; nor does it require that anything beyond the `right' of the obligee be recognized by acknowledgment of the obligor...."
and then went on to conclude Mrs. Flowers should be compensated for her injuries because, under his appreciation of the facts, the insurance company agreed it would pay Mrs. Flowers' claim for personal injuries when all the medical reports were assembled.
On rehearing in Flowers, Justice Dennis, at page 381, said:
"On rehearing we uphold the basic rule of law stated in our original opinion but resolve the case differently, primarily due to a corrected factual finding...."
and went on to state:
"Prescription of a right to damages for personal injuries or medical expenses arising from an offense or quasi-offense may be interrupted by either an express or a tacit acknowledgment of the right by the debtor...."
and at page 382 quoted the doctrinal writing of Baudry-Lacantinerie & Tissier as follows:
"Acknowledgment interruptive of prescription results from any act or fact which contains or implies the admission of the existence of the right. It can be express or tacit. When express, it is not subject to any particular form. It can be verbal or in writing."
and then of Aubry and Rau as follows:
"The acknowledgment with the interruptive effect may be express or tacit. No specific form is prescribed for the express acknowledgment; it may be by regular mail or even orally. Tacit acknowledgment results from any action which amounts to an admission of the creditor's or owner's right, for instance the payment of a bill as debtor; payment of a portion of the debt, interests or arrears by the debtor or his agent; a request for a postponement of a payment; and, a fortiori, the payment of the amount due by the agent of the debtor. The same would be true of an offer to pay the damages caused by a tort, made by the defendant in the course of the trial, or of an actual act of reparation or indemnity."
and held that:
"....prescription of a civil action based on an offense or quasi-offense is governed by the same rule pertaining to interruption by the debtor's acknowledgment as other civil actions...."
Thus, even if the claim was unliquidated, prescription could be interrupted by acknowledgment, and any statements to the contrary in such appellate court cases as Wooden v. Hartford Ins. Co., 335 So.2d 742 (2nd Cir.1976); Tassin v. Allstate Ins. Co., 310 So.2d 680 (4th Cir.1975); and Kennard v. Yazoo & M.V.R. Co., 190 So. 188 (1st Cir.1939) were incorrect interpretations of Civil Code Article 3520.
However, Justice Dennis went on to conclude:
"The interruption of prescription has no effect beyond the specific right of the person of which the debtor makes acknowledgment."
and on that basis held that the claim adjuster's acknowledgment of Mr. Flowers' right to reimbursement for medical expenses did not interrupt prescription of his wife's separate right to damages for her personal injuries. Therefore, on rehearing the exception of prescription was overruled as to the husband's cause of action as head and master of the community for medical expenses and maintained on the wife's claim for personal injuries.[3]
*395 As we understand the holding in Flowers, the basic ruling of the case is: On delictual claims the one year prescription of Civil Code Article 3536 (now Article 3492) is interrupted when the tortfeasor's insurer acknowledges either tacitly or expressly its liability for the claim even though no set amount of damages has been agreed upon. Thus, contrary to the arguments urged by the appellants, the issue here turns on whether or not there was an acknowledgment of liability on the tort claim and not as to whether or not there was an agreement as to the value of the claim. Further, contrary to the defendants' arguments, we note the first draft, although in the same amount as a previously submitted bill, was marked "Partial Settlement of a Claim for Personal Injuries Arising from Accident of 04/24/82."
The trial judge concluded prescription was interrupted by the actions of the defendant Allstate in its cognizance of the claim; the apparent liability [of the defendant]; the dealings with claimant through defendant's adjusters, and the payment of elements of the claim [tort] (medical expenses). Therefore, there was an acknowledgment of the claim sufficient to interrupt the tolling of prescription. After having carefully reviewed the record, we cannot say he erred. Rather, in our view, the testimony, as supported by the documentary evidence contained in the record, amply supports the trial judge's conclusion.
The defendants argue alternatively, however, that should we conclude the payment made on December 8, 1982 was a partial payment for Madeleine Guice's personal injury claim and thus interrupted prescription, the interrupted prescription began running anew from the date of the payment and had fully run by the time suit was filed on January 10, 1984.
Were the acknowledgment of liability predicated solely on the December 8, 1982 payment, the defendants' contention would have merit. Here, however, not only did the partial payment constitute an acknowledgment of the liability claim (as opposed to the payment of a medical bill under the medical pay provisions of the policy) it was also documentary evidence which supported Guice's testimony that although not expressly stated Allstate, through the actions of its adjusters, tacitly acknowledged liability with settlement to be concluded without regard to time limitations when medical reports were submitted.[4]
Thus, although the second payment made on January 12, 1983 was marked "Partial settlement of claim under medical payments coverage...." it too constituted an act which resulted in a tacit agreement and consequently commenced the running of prescription anew as of that date.
Accordingly, we affirm the judgment of the lower court. All costs are to be borne by the appellants.
AFFIRMED.
NOTES
[1] In January 1985 Madeleine Guice was substituted as a party plaintiff. She had reached the age of majority in January 1984.
[2] By Acts 1982, No. 187, effective January 1, 1983, Article 3520 was repealed and Article 3464 amended and re-enacted to provide:

"Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe."
[3] At page 384 of Justice Blanche's dissenting opinion is found the excerpt from the deposition of Mrs. Flowers which led him as the original majority writer to conclude the insurance company had agreed to pay Mrs. Flowers for her personal injuries when all medical reports were assembled and the majority on rehearing to conclude:

"It is true that its adjuster expressed a willingness to discuss her claim and to try to reach a compromise with her. But his statements and actions did not manifest an intention to admit the company's indebtedness to her."
[4] We note that the medical report of Dr. Derbes attached to Guice's letter of September 7, 1983 was dated September 6, 1983 and indicates that as a result of the broken jaw, the daughter's braces had to remain in place for nine months more than would have been necessary had the fracture not occurred. Also, we note the daughter's jaw sustained additional trauma in a volleyball game in October 1982. Hence, although the delays in furnishing the reports appear lengthy, the reports themselves show there were valid reasons for the delays in commencing settlement negotiations and in submitting medical reports which would support the extent and duration of the injuries sustained in the accident. Thus, although some courts have expressed the view that decisions upholding interruptions of prescription from acts done in the furtherance of amicable settlements of claims would have a chilling effect on an amicable settlement, we believe that upholding the interruption of prescription under the facts involved here will encourage amicable settlement negotiations. Where, as here, liability is apparent but there are valid issues as to the extent and duration of the injuries which could best be cured by the passage of time, acknowledgment of liability pending the ascertainment of the extent and duration of the injuries would encourage amicable settlement because it provides an alternative to filing suit to interrupt prescription.