BYRNES, Judge.
On June 12, 1985 Laura Bonilla sold the residential rental single located at 8404 Boone Street in Metairie to her son Carlos Bonilla and his wife Rosa, for $50,000, of which only $30,037.89 was paid in cash. For the balance of $19,962.11 the purchasers assumed responsibility for the payment of a mortgage in favor of plaintiff, Mellon Financial Services # 7.[1] The property was insured by Lafayette Insurance Company for $26,000.
Mrs. Bonilla was shown as the named insured on the policy and Mellon Financial Corp. # 7 was shown as mortgagee on the policy. On August 17, 1987, the property was damaged by fire. By letter dated August 25, 1987 Lafayette acknowledged to Mellon that:
1. It insured the property;
2. Mellon was the mortgagee;
3. There was a “total policy loss”;
4. The policy amount was $26,000;
Lafayette does not dispute any of these acknowledgements.
Over the course of the ensuing months there were communications between Mellon and Lafayette. On August 16, 1988, the day before the anniversary of the fire Lafayette sent a letter to Mellon stating that it would pay Mellon only $6,274.63 or 34.-21% of the $18,341.25 balance due on Mellon’s loan. Lafayette’s letter stated that the other 65.7895% or $12,066.25 should be collected from Liberty Mutual as its pro rata share of a policy providing duplicate coverage. Enclosed with the letter was Lafayette’s draft for $6,274.63 which Mellon returned demanding full payment. On September 19, 1988 approximately one month after the anniversary date of the fire Mellon filed suit against Lafayette for $18,341.25. Lafayette filed a third party demand against Liberty Mutual Insurance Company, Laura Bonilla, Carlos Bonilla and Rosa Bonilla. In turn Laura, Rosa, and Carlos Bonilla filed third party demands against Lafayette. Liberty Mutual filed Exceptions of No Right and/or Cause of Action and Prescription in response to Lafayette’s third party demand. The trial court found in favor of Liberty Mutual and dismissed Lafayette’s third party demand against Liberty. Liberty Mutual is no longer a party to these proceedings. Lafayette filed an exception of prescription which was overruled but was reargued at the trial.
After a non-jury trial on the merits the court awarded Mellon the full principal amount of its claim against Lafayette, but denied Mellon’s claim for penalties and attorney’s fees; again overruled Lafayette’s exception of prescription; dismissed Lafayette’s third party demand against Laura Bonilla; and dismissed Laura Bonilla’s third party demand against Lafayette Insurance Company. Lafayette and Mrs. Bonilla each appeal those portions of that judgment adverse to their interests.
I. The Liberty Mutual Policy Was Not In Effect At The Time Of The Fire
The trial court found that “[tjhere was no policy of insurance in effect by Liberty Mutual Insurance Company at the time of the fire.” There is sufficient evidence in the record to support a finding of fact that the proper steps had not been taken to put the policy into effect and that no premium was ever paid on the Liberty Mutual policy. We cannot say that the trial court was clearly wrong in making this finding. Rosell v. ESCO, 549 So.2d 840 (La.1989).
II. Mellon Did Not Judicially Confess Liberty Mutual’s Coverage
Citing LSA-C.C. art. 1853, Lafayette argues that Mellon in its second supplemental petition judicially confessed the existence of coverage by Liberty Mutual.
This argument fails for the following reasons:
1. Mellon’s allegations that insurance coverage by Liberty Mutual was in effect were conclusions of law, which cannot be confessed or admitted. Howard *1276 Trucking Co., Inc., v. Stassi, 485 So.2d 915, 918 (La.1986); Fontenot v. Hanover Ins. Co., 465 So.2d 743, 748 (La.App. 3 Cir.1984); Robinson v. Moore, 580 So.2d 1109, 1112 (La.App. 4 Cir.1991). Mr. Meis-ner, counsel for Lafayette acknowledged that this is á legal conclusion when he objected to a question directed to Mr. Bonil-la concerning the existence of coverage provided by his client, Lafayette:
Q. To the best of your knowledge, was there a policy in force on that property at the date of the fire loss by Lafayette August 17th, 1987?
Mr. Meisner:
Objection, Your Honor. It calls for a legal conclusion.
2. Mellon’s allegations regarding coverage by Liberty Mutual were not judicial confessions. They were alternative pleadings, in effect alleging that Lafayette or Liberty Mutual or some combination of both were liable to Mellon. A judicial confession is indivisible. LSA-C.C. Art. 1853. Lafayette may not selectively cherry pick only those allegations made by Mellon concerning Liberty Mutual which support its argument while ignoring the alternative allegations contained in the same pleadings which defeat its argument. Mellon’s allegations concerning Liberty Mutual must be viewed in context, along with its alternative allegations concerning Lafayette. The alternative nature of Mellon’s pleadings is best exemplified by, but not limited to, Mellon’s prayers for relief contained in its second supplemental and amended petition:
XIX.
* * * * # *
Wherefore, the premises considered, Mellon Financial Services Corporation #7, prays for judgment in its favor and against the defendant, Lafayette Insurance Company in the full and true sum of ... $18,341.25 ... [Incorporated by reference from the original petition.]
XX.
[[Image here]]
Wherefore, in the alternative, Mellon Financial Services Corporation # 7 prays that there be judgment in its favor and against Liberty Mutual Insurance Company in the true sum of $18,341.25 ... [Emphasis added]
XXI.
* * # * * *
Wherefore, in the further alternative, Mellon Financial Services Corporation # 7 prays that there be judgment in its favor, and against Liberty Mutual Insurance Company and Lafayette Insurance Company for their respective pro rata shares of the loss to the property at 8404 Street which shall total $18,341.25 ... [Emphasis added]
3. Mellon’s allegations regarding coverage by Liberty Mutual were not judicial confessions because they were withdrawn prior to trial. Mellon’s motion to dismiss its second supplemental and amending petition was granted on February 28, 1991 but the trial did not take place until November 26, 1991. It is obvious from the record that Lafayette was aware all along of all possible issues surrounding the coverage controversy and was neither surprised nor prejudiced by the nature of the case presented by Mellon at the trial. Mellon is not estopped by allegations contained in pleadings withdrawn long prior to trial. Guidry v. Barras, 368 So.2d 1129, 1132 (La.App. 3 Cir.1979).
If we were to adopt Lafayette’s reasoning and hold that Mellon was irrevocably bound to a position once pleaded, the result would be the same—we would be limited to the allegations of Mellon’s original petition placing full responsibility and liability solely on Lafayette.
III. Mellon’s Claim Against Lafayette Has Not Prescribed
Relying initially on Simmons v. Bartleet Chemical Inc., 420 So.2d 1273 (La.App. 3 Cir.1982), Lafayette argues that by waiting over one year to file suit Mellon’s claim prescribed. This reliance is misplaced. In Simmons plaintiff claimed both personal injury and property damage. *1277 Then insurance company, USF & G, and the plaintiff, Simmons, settled the property damage claim in October of 1979. This could not be construed as any kind of ac-knowledgement of liability for personal injury. “It should be noted that from October 1979, to November 1980, a period of one year, USF & G had no contact from either Simmons or his attorney regarding any claim being made by Simmons for his alleged personal injury.” Id., 420 So.2d at 1274. Therefore, even if the settlement of October 1979 were considered a full ac-knowledgement of both elements of damage, its effect would have prescribed by November of 1980 by which time just over a year passed without any contact with the insurance company.
In the instant case there was more than enough evidence to support a finding that prior to the expiration of the year following the fire that there was both an acknowl-edgement of the debt sufficient to interrupt prescription and a lulling of Mellon into inaction by Lafayette.
Flowers v. U.S. Fidelity and Guaranty Co., 381 So.2d 378, 383 (La.1980) also fails to support Lafayette’s position. In Flowers the court held that acknowledgement of the husband’s claim for community medical expenses was not an acknowledgement of the wife’s claim for personal injuries which was considered a distinct claim. That holding has no bearing on the instant case. Mellon is a single claimant presenting only one indivisible claim. Just as partial payment on a note interrupts prescription on the whole note, Lafayette’s acknowledgment of even part of Mellon’s claim interrupts prescription as to the entire claim.
Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975) is also inapposite. There the court held that prescription on a wife’s claim to annul a marriage contract is suspended during the marriage. The estoppel issue in Wilkinson was totally unrelated to the prescriptive issue, which is totally unrelated to the prescriptive issue in this case. Moreover, in Wilkinson the court found no detrimental reliance, whereas in the instant case there was sufficient evidence in the record to justify a finding that Mellon reasonably relied on Lafayette to its detriment.
In Armstrong v. Baldwin, 181 So.72 (La. App. 2 Cir.1938) the court considered the question of whether checks given in November and December of 1935 for payment of salary due in May and June of 1932 were sufficient to interrupt prescription for salary claims for months subsequent to June of 1932. The court held:
November check bears the following notation in the lower left-hand corner: “Salary April 15, 1932 to May 15, 1932.” The December check bears the notation on its face, “for wages May 15, 1932 to June 15, 1932.” ... Plaintiff was employed by the month and his wage or salary was due at the end of each monthly period. The payment of the two particular months’ wages or salaries does not acknowledge that any other month’s salary or wage was due or owing and does not interrupt the running of prescription against the salary or wages due for the months following.
Thus in the Armstrong case each month’s pay gave rise to virtually identical but separate claims by the plaintiff, each with its own prescriptive period. Once, again, we must point out that Mellon has a single indivisible claim and that an acknowledgment of any part interrupts prescription as to the whole. Moreover, it is significant to note that in Armstrong the court ultimately held that a verbal acknowl-edgement by the defendant after the prescriptive period had elapsed was sufficient to revive the debts.
Although the facts are distinguishable, we adopt the language of Turner v. Willow Tree Townhomes Part., 533 So.2d 107, 108 (La.App. 4 Cir.1988) as the rule in this case:
Under the law, acknowledgment sufficient to interrupt prescription may be made verbally, in writing, by partial payment or in other ways ...
The August 16, 1988 letter from Lafayette Insurance Company to Mellon’s attorney was an acknowledgment of the debt and should be read in conjunction with the earlier letter of August 25, 1987.
*1278 The letter of August 25, 1987 acknowledged the full amount of Mellon’s claim, $18,341.25. When read in conjunction with the letter of August 16, 1988 it is an acknowledgment that Lafayette’s policy covers the full amount of Mellon’s claim, unless Liberty Mutual had a policy in effect providing redundant coverage. It is clear from these letters that Lafayette acknowledged responsibility for the entire debt, except to the extent that Liberty Mutual might be responsible. Put another way, Lafayette clearly acknowledges that if Liberty Mutual is not responsible for any portion of Mellon’s claim, then Lafayette will pay it all. Mellon could reasonably expect that if it could convince Lafayette that Liberty had no responsibility for this claim, Lafayette would then voluntarily pay the full amount.
Lafayette cited the case of Collins v. Capitol Valve & Fitting Co., 409 So.2d 579 (1982) in support of its contention that “... there can be no question that Mellon knew exactly what Lafayette intended to pay and why Lafayette tendered only it[s] pro-rata portion”, i.e., there was no acknowledgment by Lafayette of the balance of the debt and therefore no interruption of prescription regarding Mellon’s claim to the balance.
Collins does not apply. In Collins the court held that there was a settlement and not an acknowledgment:
A transaction or compromise is an agreement between two or more persons who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner upon which they agree and which every one of them prefers to the hope of gaining, balanced by the danger of losing. See C.C. art. 3071. Mr. and Mrs. Collins originally sought $1,600 and retention of the salvage of their automobile; however, they ultimately accepted $1,356.34 and retention of the salvage. Therefore, the Collins’ gave up the right to claim a higher sum for property damage and the insurance company gave up the right to dispute liability.
The scope of a transaction is delineated in C.C. art. 3073 which states:
“Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.”
In this case the legal effect of Lafayette’s actions was one of acknowledgment. Although the letter of August 16, 1988 contains the word “settlement”, it contains no settlement language. Lafayette did not dispute the amount of Mellon’s claim. There is no evidence of a negotiated amount. Lafayette is not asking Mellon to take less to avoid litigation. Lafayette asked Mellon to accept a pro rata portion of the claim with the expectation that Mellon would collect the balance from Liberty, but with the clear implication that if Lafayette’s opinion that Liberty had a pro rata responsibility for Mellon’s claim were incorrect, then Lafayette would pay the full claim. At all times it is clear that Lafayette acknowledged and expected Mellon’s full claim to be paid.
This is analogous to Guice v. Mustakas, 490 So.2d 390 (La.App. 5 Cir.1986) where the court stated:
Thus, contrary to the arguments urged by the appellants, the issue here turns on whether or not there was an acknowledgment of liability on the tort claim and not as to whether or not there was an agreement as to the value of the claim. Id. at 395.
Lafayette also argues that “if the acknowledgment does not dissuade the creditor from filing suit, the judicial reasoning recognizing interruption does not exist.” Nicosia v. Doe, 563 So.2d 1359 (4 Cir.1990) cited by Lafayette provides no support for this assertion. Logic provides none either, for if plaintiff’s contention were true, there could be no way of proving acknowledgment. The filing of suit would automatically nullify the effect of the acknowledgment.
*1279 In addition to the specific acknowledgment contained in Lafayette’s letter of August 16,1988 there is sufficient evidence of other communications in the record to support a finding that Lafayette led Mellon to believe all along that it could expect to receive full payment.
Lafayette is estopped from lulling Mellon into inaction and then urging that very inaction as the basis of its plea of prescription:
An insurer may waive the provision of the insurance contract which limits the time within which the insured may bring suit to enforce the payment of claims for losses alleged to be covered by the contract, and such waiver need not be in writing but may be made orally, or the insurer may by its acts and conduct be estopped from asserting such provision as a defense to an action on a policy. The insurer cannot hold out the hope of an amicable adjustment of the loss, and then plead the delay, caused by his own conduct, as a defense to the action when brought. Brocato v. Sun Underwriters Insurance Company of New York, [219 La. 495] 53 So.2d 246, 249 (La.1951).
IY. Lafayette’s Claim For Reimbursement From Laura Bon-illa Is Without Merit
Lafayette argues that if it is ordered by this court “to pay plaintiff anything”, it will be paying a debt “it does now owe” which would be unjust enrichment. This court does not order parties to pay claims they do not owe. Mellon was an additional insured under Lafayette’s policy and entitled to payment. Mrs. Bonilla no longer owned the property and was no longer making payments on the property. However, she was liable if the new owners defaulted in making the mortgage payments. Lafayette’s letter of August 25, 1988 acknowledged that the insured structure was completely destroyed by fire. That structure was collateral for Mellon’s loan and would have been used to satisfy and discharge any liability that Mrs. Bonil-la had in the event the new owners defaulted on the loan. The destruction of the building provides a valid legal cause for the payment of the insurance claim to the mortgage holder. No funds flowed to Mrs. Bonilla, and the loss of the collateral in the fire offsets any benefit Mrs. Bonilla may derive from the payment of Mellon’s mortgage. Mrs. Bonilla has not been enriched. To put it another way, the very fact that Mrs. Bonilla remained liable for the debt to Mellon, not to mention her vendor’s lien, allowed her to retain an insurable interest in the collateral.
LSA-R.S. 22:614 B provides that:
“Insurable interest” as used in the Section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage.
Mrs. Bonilla’s interest in the property after she sold it remained no less, qualitatively, than that of Mellon — and no one disputes Mellon’s insurable interest in the property even though Mellon was no more the owner of the property at the time of the loss than was Mrs. Bonilla.
We note that there is no provision in the policy requiring that the named insured own the property, nor is there a provision terminating coverage upon the termination of ownership.
We agree with the reasoning of the court in Evans v. First of Georgia Ins. Co., 479 So.2d 568 (La.App. 1 Cir.1985):
“Louisiana has had an “anti-technical” statute since 1928, La.R.S. 22:692. The trial judge concluded as a matter of fact, and we agree, that the transfer of ownership of the triplex from Evans to Dr. Reaux did not increase either the physical or moral risks insured against. The occupancy of the apartment complex remained the same. Evans as mortgagee had as much or more interest in preserving the property as he did when he was owner.” Id. at p. 570.
V. Mrs. Bonilla’s Claim Against Lafayette Is Without Merit
Mrs. Bonilla argues that Lafayette should pay her the balance of the $26,000 face amount of the policy remaining after *1280 the satisfaction of Mellon’s mortgage balance of $18,341.25. After Mrs. Bonilla sold the property, her only insurable interest remaining was her interest in seeing the credit portion of her sale of the property satisfied by discharging the indebtedness to Mellon. When Mellon’s mortgage is satisfied pursuant to the judgment of this court, Mrs. Bonilla’s debt to Mellon is extinguished as is her son and daughter-in-law’s obligation to her. She has no further claims or liabilities and her insurable interest is totally extinguished.
VI. Lafayette Is Not Entitled To Subrogation
Lafayette argues that if it is not entitled to recover what it paid Mellon from Mrs. Bonilla based on unjust enrichment, then it is entitled to recover from her based on a theory of subrogation. However, as we have already determined that Mrs. Bonilla had an insurable interest both in the balance due on the Mellon mortgage and in the amount due from her vendees, we find no merit in Lafayette’s claim.
VII. Lafayette Was Not Arbitrary and Capricious
The trial court found that the actions of Lafayette were neither arbitrary nor capricious. We will not disturb that finding unless it is clearly wrong. On the face of the record Mellon’s claim had prescribed creating a presumption in favor of Lafayette that Mellon was only able to overcome after a full trial on the merits. The question of possible overlapping coverage by Liberty Mutual was not frivolous. The question of the effect of the sale of the property by Mrs. Bonilla was not frivolous. The fact that all of these issues were ultimately decided against Lafayette does not mean that they were without substance and therefore arbitrary and capricious. Any one of these issues is sufficient to support the finding of the trial court.
For the foregoing reasons we affirm the trial court’s judgment.
AFFIRMED.

. Although the transfer is entitled "Act of Sale and Assumption” its legal effect was that of an act of sale subject to Mellon’s mortgage because Mellon was not a party to the transaction.