870 So.2d 1057 (2004)
Steven ROSEN, individually and on behalf of his Minor Children, Jordan Rosen and Courtney Rosen, and Robin Renee Fuller, Wife of Steven Rosen
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Fireman's Fund Insurance Company, Ryan Sturprich and Adele Lejune.
No. 2003-CA-1744.
Court of Appeal of Louisiana, Fourth Circuit.
March 17, 2004.
*1058 Robert F. Shearman, Kevin D. Shearman, Shearman & Shearman, L.L.C., Metairie, LA, for Plaintiffs/Appellants.
C. Gordon Johnson, Jr., James R. Nieset, Jr., Porteous, Hainkel & Johnson, New Orleans, LA, for Defendants/Appellees.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge EDWIN A. LOMBARD).
PATRICIA RIVET MURRAY, Judge.
In this personal injury case, the plaintiffs, Robin Rosen and her husband, Steven Rosen, individually and on behalf of his two minor children (the "Rosens"),[1] appeal from a judgment sustaining the exception of prescription filed by the defendants, State Farm Mutual Automobile Insurance Company and its insured, Adele Lejune. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On July 7, 1991, the Rosens, who are Texas residents, were involved in a motor vehicle accident in Orleans Parish. The accident occurred when the van in which the Rosens were riding was struck from behind by a vehicle operated by Ryan Sturprich and owned by his mother, Ms. Lejune. Following the accident, the Rosens retained Ronald Bass, a Texas attorney, to represent them. Mr. Bass, who handled primarily personal injury matters, shared office space with Mr. Rosen, who also was a Texas attorney.
Within a week of the accident, Mr. Bass began communicating with Yolanda Booth, an adjuster in State Farm's Houston, Texas office, regarding the accident. Likewise, Mr. Bass's secretarial-assistant, Nina Marino, and Mrs. Rosen herself communicated with Ms. Booth regarding the accident. During the one-year period following the accident, Ms. Booth, on State Farm's behalf, made payments for property damage to the Rosens totaling $6,961.44. These payments were for damage to the Rosens' van; various personal items that flew out the back of the van or were damaged, including Mr. Rosen's golf equipment; and car rental payments.
Also during this one-year period, Mrs. Rosen, who was pregnant at the time of the accident, underwent medical treatment for the personal injuries she allegedly sustained. Mr. Bass forwarded copies of Mrs.
*1059 Rosen's medical expenses to State Farm through Ms. Booth when he received them from the doctors. State Farm, however, made no payments of medical expenses. According to the Rosens, Ms. Booth requested that Mr. Bass forward all of Mrs. Rosen's medical expenses so that they could settle the matter. Mrs. Rosen's medical treatment, however, extended beyond the one-year period.
On October 10, 1992, the Rosens filed this suit in Orleans Parish.[2] Named as defendants were the driver, Mr. Sturprich (who was a minor at the time of the accident); the driver's parents, Anthony Sturprich and Adele Lejune (who had separate addresses); State Farm, the driver's mother's (Adele Lejune's) liability insurer;[3] and Fireman's Fund Insurance Company, the Rosens' uninsured motorist carrier.
On November 24, 1992, State Farm, on behalf of itself and its insured, filed an exception of prescription, noting that the accident occurred on July 7, 1991, yet suit was not filed until October 10, 1992, more than a year later. State Farm thus contended that the suit was prescribed under the one-year period for delictual actions set forth in La. C.C. art. 3492. The Rosens countered that prescription was interrupted under La. C.C. art. 3464 as a result of State Farm's acknowledgment of liability. The Rosens sought a continuance of the hearing on the exception to allow discovery. Opposing the continuance and the need for discovery, State Farm argued that pursuant to the obligations imposed on it by La. R.S. 22:658(2), it made several uncontested payments to conclude the Rosens' property damage claims. The Rosens' request for a continuance was granted and a protracted period of discovery followed.
As part of that discovery, the Rosens sought production of State Farm's entire claims file on this matter. On June 30, 1994, the trial court rendered judgment on the discovery issues, holding that it had conducted an in camera review of State Farm's entire claim file and that it had found "no information in the file, sufficiently relating to this [prescription] issue to justify production of the file." In that judgment, the trial court ordered State Farm to provide the Rosens with two listing: (i) a listing of all the payments it had made to them; and (ii) a listing of the contacts it had with them, or their representatives, both verbal and written.
In compliance with the trial court's order, State Farm complied a "List of Contacts," which detailed the following communications and payments:
 July 9, 1991Claimants (the Rosens) called State Farm (self-referral). State Farm sent check for $2,103.41 ($1,943.41 property damage) (estimate vehicle repairs) and $160 (auto rental) to Mrs. Rosen.
 July 10, 1991Ms. Booth, State Farm's claim adjuster, called Mr. Bass and left message to call her back.
 July 11, 1991Mr. Bass faxed letter of representation to Ms. Booth.
 July 18, 1991Ms. Booth sent Mr. Bass letter acknowledging letter of representation and requesting medical authorization form and other standard matters.
*1060  August 1, 1991Ms. Booth called Mr. Bass's secretarial-assistant, Ms. Marino, requesting BI index information.
 August 20, 1992, Ms. Booth sent check to car dealership for $2,260.16 in property damage.
 August 21, 1991, Ms. Booth sent Mr. Bass a letter inquiring as to the status of his client's treatment.
 August 27, 1991The car dealership called Ms. Booth regarding payment of supplemental property damage estimates.
 August 28, 1991Ms. Booth sent check to car dealership for $2,911.35 in property damage.
 September 4, 1991Mr. Bass sent Ms. Booth a letter regarding medical specials and a list of personal items (i.e., damaged and/or lost items that flew from the back of the van totaling $1,146.88).
 September 10, 1991Ms. Booth sent check to car rental company for $1,898.99.
 October 18, 1991Ms. Booth called Ms. Marino regarding Mrs. Rosen's treatment and was told that Mrs. Rosen was still treating and that other family matters are fine. Also she was told that no other personal articles that had fallen out in the accident had been found. Ms. Marino called Ms. Booth and informs her that Mr. Rosen wants to claim lost golf equipment and that she would send a demand in writing. Ms. Booth sent a check to Mr. and Mrs. Rosen for $1,146.88 in property damage, which was the total of lost personal items claimed to have fallen from the van. Mr. Bass sent Ms. Booth a letter demanding payment for Mr. Rosen's lost golf equipment.
 October 21, 1991Ms. Booth sent a check to Ms. Rosen for $500 property damage, which was the total claimed for the golf equipment.
 October 29, 1991Ms. Booth called Ms. Marino and left a message to call back.
 December 12, 1991Mr. Bass sent Ms. Booth a letter with additional medical specials on Mrs. Rosen.
 December 30, 1991Ms. Booth called either Ms. Marino or Mr. Bass and was advised that Mrs. Rosen was still treating and that there were more medicals to come.
 February 5, 1992Ms. Booth sent a letter to Mr. Bass asking him to advise her of his client's progress.
 February 19, 1992Mr. Bass sent a letter to Ms. Booth providing additional medicals and a rental claim for Mrs. Rosen.
 March 18, 1992Ms. Booth sent a letter to Mr. Bass seeking additional medicals on Mrs. Rosen.
 March 20, 1992Ms. Booth sent a check to Mr. and Mrs. Rosen for $52 in property damages (for rental and parking expenses). Ms. Booth sent a letter to Mr. Bass forwarding the $52 check.
 May 18, 1992Ms. Booth sent a letter to Mr. Bass regarding the status of the case.
 May 27, 1992Mr. Bass sent a letter to Ms. Booth regarding additional medicals.
 July 7, 1992One year anniversary of accident.
 July 24, 1992Mr. Bass sent a letter to Ms. Booth regarding additional medicals.
 September 24, 1994Mr. Bass sent a letter to Ms. Booth regarding additional medicals.
*1061  October 8, 1992Mr. Bass sent a letter to Ms. Booth regarding Mrs. Rosen's finishing treatment and indicating the final narratives were on the way. Ms. Booth called Ms. Marino to discuss the case status, and Ms. Marino wanted to know policy limits, but Ms. Booth did not disclose them to her.
 October 15, 1992Ms. Booth sent Mr. Bass a letter regarding the one-year statute of limitations in Louisiana.
 October 19. 1992The Rosens filed petition in Civil District Court.[4]
Also as part of the discovery, the parties unsuccessfully attempted to locate Ms. Booth, the State Farm adjuster. At some point after handling the claim at issue and the commencement of discovery, Ms. Booth ceased employment with State Farm. Although State Farm in response to discovery interrogatories provided the Rosens with a last known address for Ms. Booth in California, neither the Rosens nor State Farm was able to locate her.
After an extensive discovery dispute and a period of inactivity, the exception of prescription was set for hearing on July 31, 1998. On August 18, 1998, the trial court denied State Farm's prescription exception. In its reasons for judgment, the trial court analogized the facts of this case to those in Sotomayor v. Lewis, 95-2520 (La. App. 4 Cir. 4/24/96), 673 So.2d 1201. The trial court reasoned that in Sotomayor, supra, there was no evidence the insurer ever contested liability; rather, the entire tenor of the communications between the insurer's adjuster and the plaintiff's attorney left the distinct impression that liability was never at issue. Likewise, the trial court held that "the communications between the defendants' adjuster [Ms. Booth] and plaintiffs' [the Rosens'] original counsel [Mr. Bass] left the distinct impression and in fact lulled the plaintiffs into believing that liability was not contested."
On State Farm's application, we granted writs, reversed the trial court and remanded. In so doing, we reasoned:
Plaintiffs have asserted in numerous memoranda that the State Farm adjuster orally acknowledged liability for all damages during phone conversations on October 18, 1991, March 20, 1992, and on October 9, 1992. However, State Farm represents in its briefs that "these communications were [all] preliminary to settlement negotiations" and that "no evidence exists to indicate an acknowledgment [sic] which would interrupt prescription." Because legal memoranda do not constitute pleadings under La.Code Civ. Pro. art. 852, see Vallo v. Gayle Oil Co., 94-1238, p. 8 (La.11/30/94), 646 So.2d 859, 865, neither party has alleged or denied these crucial facts. Furthermore, there is no evidence in the record regarding the substance of the conversations at issue; the only material which might be relevant is a "List of Contracts" filed by State Farm in connection with a discovery motion. Thus, because the plaintiffs neither pleaded nor proved any facts which would establish a suspension or interruption of prescription, the petition has prescribed on its face and defendants' exception must be maintained.
Under La.Code Civ. Proc. art. 934, a judgment maintaining an exception of prescription shall include leave to amend if the grounds for the exception can be removed by amendment. Reeder v. North, 97-0239, p. 15 (La.10/21/97), 701 So.2d 1291, 1299; Chapital v. Guaranty Savings & Homestead Ass'n, 96-0244, *1062 pp. 4-6 (La.App. 4th Cir.10/2/96), 681 So.2d 1307, 1310, writ denied, 96-2639 (La.12/13/96), 692 So.2d 1068. In this case, as in Chapital, plaintiffs have asserted facts which, if pleaded, and proved, would establish that their claims have not prescribed. Accordingly, the judgment overruling the exception of prescription is reversed, but the matter is remanded for the district court to allow a specified period of time in which plaintiffs may amend their petition.
On remand, the trial court allowed the Rosens thirty days to amend. In response, the Rosens timely amended their petition to add the following allegation:
[T]he actions of defendant, State Farm Mutual Automobile Insurance Company, including but in no way limited to, State Farm's payment of over $8,000.00 in special damages incurred by plaintiffs as a result of this accident, as well as various communications, both written and oral, which occurred throughout the prescriptive period between State Farm, through its adjuster, and plaintiffs (both directly and through plaintiffs' former counsel), during which said defendant through its adjuster specifically admitted that its insured was at fault in the subject accident, and stated that it would pay the claim, constitute an acknowledgment of liability and/or that said actions have otherwise lulled plaintiffs into believing that liability has not and will not be contested in this case; therefore, pursuant to the applicable law, including but not limited to, LSA-C.C. Art. 3464, and the applicable jurisprudence, prescription was interrupted in this case such that the lawsuit filed herein on October 19, 1992, although filed more than one year after the subject accident, is timely.
State Farm responded by filing another exception of prescription, asserting that "[n]o proof exists to substantiate plaintiffs' allegations that liability was acknowledged and prescription interrupted." State Farm argued that after six years and extensive discovery the Rosens were unable to provide any evidence that it acknowledged liability for the bodily injury claim. Opposing the exception, the Rosens argued that State Farm, through its adjuster, Ms. Booth, acknowledged liability on numerous occasions, and lulled them into believing that liability was not an issue. In support of this position, the Rosens relied on both the List of Contacts and affidavits it submitted of Mr. Bass and Ms. Marino. In those affidavits, Mr. Bass and Ms. Marino attested that Ms. Booth acknowledged State Farm's liability for the accident. State Farm retorted that affidavits are not admissible on an exception of prescription.
On May 26, 1999, the trial court rendered judgment granting State Farm's exception of prescription. From that judgment, the Rosens appealed. On September 14, 2000, this court, in an unpublished opinion, vacated the trial court's decision sustaining the prescription exception and remanded for further proceedings. Rosen v. State Farm Mut. Auto. Ins. Co., 99-2986 (La.App. 4 Cir. 9/14/00), 771 So.2d 328 (table). In so doing, we first noted that we had "no criticism of the trial court's decision and we understood fully the trial court's decision to proceed to disposition of the prescription issue and to maintain the exception." We further noted that the trial court apparently agreed with State Farm that the affidavits were inadmissible on an exception and thus that there was no evidence to support an acknowledgement. We still further reasoned that the trial court should have allowed the Rosens to introduce live or deposition testimony of Mr. Bass and Ms. Marino. In that regard, we *1063 noted that we were "reluctant to see what might be a meritorious assertion of interruption of prescription by acknowledgement lost simply because of an evidentiary/procedural misstep of the plaintiffs." Finally, we rejected State Farm's argument that such testimony would have been hearsay, reasoning that "Ms. Booth was an employee of State Farm and, as the adjuster handling the plaintiffs' claim, any statements she made acknowledging liability of State Farm would have been made within the scope of her employment. Consequently, testimony [by Mr. Bass or Ms. Marino] that she made such statements would not be excludable as hearsay. La.Code Evid. art. 801.D.(3)."
On March 22, 2002, a hearing was held in the trial court at which the Rosens presented three live witnesses; to wit: Mr. Bass, Ms. Marino and Mrs. Rosen.[5] All three witnesses testified regarding their conversations with Ms. Booth. All three witnesses testified that they believed State Farm was not disputing liability. In response to the trial court's questions at the hearing regarding whether there was any written evidence of State Farm's acknowledgment of liability, Mr. Bass and Ms. Marino both responded that there was none. Another point the trial court focused on at the hearing was the distinction between the two year statute of limitations for tort claims under Texas law and the one year prescriptive period for such claims under Louisiana law. Both Mr. Bass and Ms. Marino admitted they were unaware of that distinction. Given that this suit was not filed within the applicable Louisiana one-year prescriptive period and given that no acknowledgment was found, the trial court granted State Farm's exception of prescription. This appeal followed.[6]

DISCUSSION
The Louisiana Civil Code provides a one-year prescriptive period for delictual actions. La. C.C. art. 3492. Although the party pleading prescription ordinarily has the burden of proof, the burden is shifted to the plaintiff when the petition on its face reveals that prescription has run. Lima v. Schmidt, 595 So.2d 624, 628 (La.1992). Such is the case here. On its face, the Rosens' petition states that the accident occurred on July 7, 1991, yet this action was not commenced until October 10, 1992, over fifteen months later. The Rosens thus have the burden to establish that their claim was not prescribed.
The Rosens contend that State Farm's payment of almost $8,000 in property damage ($6,941.44 to be exact) as well as its adjuster's oral admissions of liability in conversations with Mr. Bass, Ms. Marino, and Mrs. Rosen were sufficient to constitute an acknowledgment of liability and thus to interrupt prescription. State Farm counters that there is no proof of an acknowledgment. In so far as the Rosens rely on its property damage payments, *1064 State Farm cites La. R.S. 22:661, which it contends makes those property damage payments irrelevant.[7]
Acknowledgment is governed by La. C.C. art. 3464, which provides that "[p]rescription is interrupted when one acknowledges the right of the person against whom he has commenced to prescribe." La. C.C. art. 3464. Acknowledgement interrupting prescription of a right may be oral or written, formal or informal, and express or tacit. La. C.C. art. 3464, Revision Comments (e). Construing this article and reaffirming its prior holding in Flowers v. United States Fidelity & Guaranty Co., 381 So.2d 378 (La.1979), that a delictual obligation can be tacitly acknowledged, the Louisiana Supreme Court in Lima, supra, offered the following generalizations:
A tacit acknowledgment occurs when a debtor performs acts of reparation or indemnity, makes an unconditional offer or payment, or lulls the creditor into believing he will not contest liability. Conversely, mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims will not constitute acknowledgments.
Lima, 595 So.2d at 634. Further, the court listed the following criteria the courts have added to the above generalizations: "undisputed liability, repeated and open-ended reassurances of payment, and continuous and frequent contract with the creditor throughout the prescriptive period." Id. Still further, the court noted that "mere recognition of a disputed claim, conditional payments, and settlement or compromise offers or negotiations do not evidence an acknowledgment." Id. Summarizing, the court defined an acknowledgment as "a simple admission of liability resulting in the interruption of prescription that has commenced to run, but not accrued, and may be made on an informal basis." Id.
The Rosens first assignment of error is that the trial court erred when it ignored the uncontroverted testimony at the hearing of Mrs. Rosen, Mr. Bass, and Ms. Marino unequivocally establishing State Farm's acknowledgment of liability sufficient to interrupt prescription.
Mr. Bass, who had been practicing law for thirty years, testified that the first thing he always does in handling a personal injury claim is to make a liability determination. He explained that whenever there is an objection or problem with liability, he files suit immediately. In this case, he testified that "[f]rom day one on this case I talked to this adjuster, and from day one she told me she was acknowledging and accepting liability, and we were unfortunately lulled for a period of time into believing that that's exactly what was going on." Continuing, Mr. Bass testified that liability in this case "was never an issue. It was only an issue of when we were going to have all of our medical so we could submit final demands." He stated that this point was evidenced by Ms. Booth's continual request that they furnish State Farm with all Mrs. Rosen's medical expenses. He stated that he continually responded to this request that his client was still treating. Mr. Bass also testified that "from *1065 day one" Ms. Booth's attitude was that "she was going to settle with me for ... something under the terms of the policy."[8] This attitude, he testified, continued even after the one-year anniversary, July 7, 1992.
Similar to Mr. Bass, his secretarial-assistant, Ms. Marino, testified that Ms. Booth continually acknowledged liability. Ms. Marino testified that Ms. Booth stated to her that State Farm accepted liability on the medical part of the case. She also stated that when she asked Ms. Booth for State Farm's limits of liability, Ms. Booth called back the same day and told her that the limits were $100,000. In that same conversation, Ms. Booth asked her when the rest of Mrs. Rosen's medical expenses would be in so that they could settle the case. Ms. Marino further testified that in another conversation, albeit at the time of the "property damage settlement," that it was "her insured's fault and that they were willing to pay for anything, you know, that wasthat the Rosens lost." In particular, Ms. Marino quoted Ms. Booth's exact statement to be that "[w]e've accepted liability on this claim." Still further Ms. Marino testified that Ms. Booth told her "that they were liable, not to worry about anything, that it was all going to be taken care of. Just get her the specials on the medical, and as soon as we wrapped up her medical treatments, then she would settle with Mr. Bass."
Mrs. Rosen testified that she too communicated with Ms. Booth. In particular, Mrs. Rosen testified that in March 1992 she discussed with Ms. Booth her personal injury claim. According to Mrs. Rosen, Ms. Booth was "very accommodating" and indicated that "[a]ny doctor I wanted to go to would be covered, any type of therapy I wanted to try."
The Rosens characterize the above testimony as supporting a finding that State Farm, through its adjuster, continuously acknowledged liability from day one sufficient to interrupt prescription. In support, they cite in Sotomayor, supra, in which they contend this court found an acknowledgment under less compelling facts. Although the trial court in this case found this case analogous to Sotomayor, supra, the trial court did so before there was any testimony presented on the prescription exception. Although we remanded this case for the introduction of testimony, we noted that "[w]e do not imply that the trial court must accept the live or deposition testimony of Mr. Bass and/or Ms. Marino. As with all witnesses, the trial court must evaluate their credibility and weigh their testimony with any other evidence." The trial court apparently found the testimony of the Rosens' three witnesses regarding State Farm's acknowledgement of liability for the bodily injury claim unpersuasive.
In resolving the dispute presented on appeal regarding the correctness of the trial court's decision, we find the following statement by a commentator instructive:
The claims handling process is often a lengthy one, especially when the insurer considers rejecting the claim. During this process, the insurer and insured or beneficiary are in frequent contact, and may exchange numerous letters. It is not difficult to imagine a variety of insurer actions and statements that may be subjectively construed by the claimant or the claimant's counsel as an indication that the claim will be paid once the insurer has finished its investigation. When this occurs, but the insurer ultimately denies the claim, especially in a *1066 case that is governed by a very short... limitation period, the result is often a lengthy judicial dispute in which the insured or other claimant vehemently argues that it has been misled by the insurer and should not be deprived of the right to have a judicial determination of the merits of its claim, and the insurer argues with equal vehemence that its perfectly ordinary claim evaluation process should not operate to deprive it of the protection of the limitation period.
* * *
... [M]any of these cases do not lend themselves to easy determinations of which party is correct in its characterizations of the substance and intent of the insurer's actions and statements during the claims handling process. The resolution of these cases depends in large part on the quality of the proof as to exactly what was said, by whom, to whom, and on what date.
Lee R. Russ and Thomas F. Segalla, Couch on Insurance 3D § 238:30 (2000).
The Rosens' sole evidence to support their claim of an acknowledgement was the testimony of their three witnesses. Again, the trial court apparently did not find the testimony of the Rosens' three witnesses established State Farm's acknowledgment of liability. When, as here, testimony has been presented before the trial court on the peremptory exception of prescription, we review the trial court's factual conclusions under the manifest error standard. Crain v. Pletka, 35,636, pp. 5-6 (La.App. 2 Cir. 1/23/02), 806 So.2d 950, 954.
The Rosens had the burden of establishing an acknowledgement. They contend that they were lulled into believing liability was not contested by State Farm's adjuster's, Ms. Booth's, statements. State Farm counters that it simply engaged in its ordinary claim evaluation process. The trial court, as noted, agreed with State Farm. We cannot say that the trial court's finding was manifestly erroneous. Indeed, both Mr. Bass and Ms. Malino testified that Ms. Booth's position was that she would be willing to discuss settling Mrs. Rosen's personal injury claim when all the medical expenses were received. That position is simply a recognition of a disputed claim, not an admission of liability or an acknowledgment. See Crain, 35,636 at p. 6, 806 So.2d at 954 (collecting cases)(noting that when there is no admission of liability there is no acknowledgment); see also Sotomayor, 95-2520 at p. 7, 673 So.2d at 1205 (distinguishing an acknowledgement from a defendant recognizing the existence of a disputed claim.)
The Rosens' second assignment of error is that the trial court erred when, despite the testimony that Ms. Booth acknowledged liability throughout and even after the prescriptive period, it nevertheless held that without written correspondence from State Farm acknowledging liability, the Rosens could not establish that State Farm acknowledged liability sufficient to interrupt prescription. We find this argument unpersuasive.
Although an acknowledgment generally can take any form and need not be in writing, the trial court's reference to a writing, viewed in context, was simply an inquiry regarding whether there was any writing supporting the Rosens' position. Given this case involved an attorney dealing with an adjuster, the trial court's request that the Rosens produce some written evidence to corroborate their claim that State Farm admitted liability for the bodily injury claim was not clearly wrong. This is especially true given the trial court's in camera review of State Farm's entire claim file for this matter produced *1067 no evidence of any admission of liability for the claim. Likewise, State Farm's List of Contacts contains no reference to an acknowledgement of liability. Although that list refers to various payments to the Rosens, those payments were all for property damages. We further note that this is not a case in which the plaintiffs were uneducated or unrepresented. Mr. Rosen himself was a Texas attorney, and the Rosens retained counsel early on to represent them.
Summarizing, we find the trial court was not manifestly erroneous in finding the testimony presented at the hearing did not support the Rosens' position that there was an acknowledgment. Nor, as the trial court's questions revealed, was there any writing supporting the Rosens' position. Finally, as State Farm stresses, the "payment of property damages does not bear any weight on deciding whether prescription was interrupted." Sotomayor, 95-2520 at p. 5, 673 So.2d at 1204. Although we acknowledge the well-settled principle that prescription should be strictly construed against the extinguishment of a claim, we nonetheless conclude that the Rosens failed to carry their burden of proving that prescription was interrupted by acknowledgement.

DECREE
For the foregoing reasons, we affirm the judgment of the trial court granting the exception of prescription and remand for further proceedings consistent with this opinion.
AFFIRMED.
NOTES
[1] Mrs. Rosen is the only family member who allegedly sustained personal injuries as a result of the accident.
[2] Although the parties refer to the petition having been filed on October 19, 1992, the record reflects that the petition was stamped as filed on October 10, 1992.
[3] The record reflects that State Farm insured the minor driver's mother, Adele Lejune, and that the driver-son was a permissive user of the vehicle. The driver's father apparently was not a State Farm insured and represented himself pro se in the trial court.
[4] As noted elsewhere, the petition was actually stamped as filed on October 10, 1992.
[5] Also introduced at the hearing were copies of the checks from State Farm for the property damages as well as copies of various correspondence that accompanied those checks.
[6] Although the trial court stated orally that the judgment was a final, appealable one, this court dismissed the Rosens' initial appeal from that judgment because the district court failed to designate its interlocutory judgment as a final, appealable judgment. Although the Louisiana Supreme Court denied the Rosens' writ application, Chief Justice Calogero noted in his concurrence from that writ denial that there is no time limit for seeking such a designation from the trial court and suggested that the Rosens file a second motion to designate the judgment as immediately appealable. Rosen v. State Farm Mut. Auto. Ins. Co., XXXX-XXXX (La.4/4/03), 845 So.2d 357 (Calogero, C.J., concurring in denial of writ). As suggested by Chief Justice Calogero, the Rosens obtained the necessary designation and perfected the instant appeal.
[7] La. R.S. 22:661 provides:

No settlement made under a motor vehicle liability insurance policy of a claim against any insured thereunder arising from any accident or other event insured against for damage to or destruction of property owned by another person shall be construed as an admission of liability by the insured, or the insurer's recognition of such liability, with respect to any other claim arising from the same accident or event.
[8] Somewhat inconsistent with his secretarial-assistant's testimony, Mr. Bass testified that he was unaware of the amount of State Farm's policy limit.